Attorneys for Plaintiff
Stillman Legal, P.C.
42 Broadway, 12t Floor
New York, New York 10004
Tel (212) 832-1000
www.StillmanLegalPC.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VALERIA LOPEZ, KAREN MOLINA,
ANGELICA PEREZ and MICHAEL VALENCIA,

                    Plaintiff,         **ACTION UNDER 29 U.S.C.§ 216(b)**

  -v.-

                                        **COMPLAINT**
TAQUERIA LA NORTENA, CORP and
GUILLERMO LOPEZ, Individually,

                    Defendants
------------------------------------------------------------X

Plaintiffs VALERIA LOPEZ, KAREN MOLINA, ANGELICA PEREZ and MICHAEL VALENCIA, by and through their attorneys, STILLMAN LEGAL PC., bring this Action against Defendants TAQUERIA LA NORTENA, CORP and GUILLERMO LOPEZ, Individually (collectively, the "Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 USC §§ 201 et seq., the New York Labor Law ("NYLL") § 650 et seq., as recently amended by the Wage Theft Prevention Act ("WTPA"), NYLL § 195(3), NYLL § 191, and related provisions from Title 12 of New York Codes, Rules and Regulations ("NYCRR") § 137-1.7 (2006), and alleges upon information and belief, as follows:

## NATURE OF THE ACTION

1. This Complaint seeks to recover, inter alia, unpaid minimum wage and overtime wage compensation for the Plaintiffs, a former employee of Defendant TAQUERIA LA NORTENA, CORP, a New York Corporation with offices at 668 Manhattan Ave, Brooklyn, NY 11222. Its principal/officer/agent, Defendant GUILLERMO

LOPEZ, employed the Plaintiffs as laborers, waitresses, and cooks.

2. At all times relevant hereto, Defendants were required, under relevant New York State law, to pay and compensate the Plaintiffs at a minimum rate of $15.00 per hour (the "minimum wage"); however, the Plaintiffs were only compensated at a rate of $5, $6 and $10 per hour for 40 hours workweek.

3. At all times relevant hereto, Defendants were required, under relevant New York State law, to compensate the Plaintiffs with overtime pay at one and one-half the regular rate for work in excess of forty (40) hours per work week.

4. However, despite such mandatory pay obligations, Defendants only compensated the Plaintiffs at a rate of $5, $6, $10, $15 and $16 per hour and failed to pay the Plaintiffs their lawful overtime pay for that period from 2014, until January 23, 2024, August 1, 2023, until January 23, 2024, April 9, 2023, until January 22, 2024 and January 2015 until January 21, 2024, where they worked well in excess of forty (40) hours per workweek.

5. Defendants' conduct extended beyond the Plaintiffs to all other similarly situated employees, and at all times relevant to this Complaint, Defendants maintain a policy and practice of requiring Plaintiff and other employees to work without providing the minimum and overtime compensation required by federal and state law and regulations. Moreover, at all relevant times, Defendants failed to maintain accurate record keeping as required by the FLSA and the NYLL.

6. Plaintiffs also bring this action under the Wage Theft Prevention Act for Defendants' failure to provide written notice of wage rates in violation of said laws.

7. Accordingly, the Plaintiffs now bring this Action for federal and state claims relating to unpaid minimum wages, unpaid overtime wages, and failure to maintain records pursuant to the FLSA, 29 USC §§ 201 et seq., NYLL § 650 et seq., as recently

amended by the WTPA, NYLL § 195(3), as well as those related provisions in Title 12 of the NYCRR.

8. In connection therewith, the Plaintiffs seek compensatory damages (minimum and overtime wages due), liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to the FLSA and NYLL.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 USC § 1331, 29 USC §§ 216(b)(c), and 217; and 28 USC § 1337.

10. This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction pursuant to 28 USC § 1367.

11. This Court is empowered to issue a declaratory judgment pursuant to 28 USC §§ 2201 and 2202.

12. Venue is proper in the Eastern District of New York, pursuant 28 USC § 1391(b)(c), because Corporate Defendants reside in this District, Plaintiff resides in this District, and because all or a substantial part of the events or omissions giving rise to the claims occurred herein.

## PARTIES

**Plaintiffs**

13. Plaintiff VALERIA LOPEZ ("LOPEZ") is and was at all times relevant hereto an individual residing in New York.

14. Plaintiff LOPEZ was employed by TAQUERIA LA NORTENA, CORP, at its place of business, 668 Manhattan Ave, Brooklyn, NY 11222, from approximately 2014 until June 2018, again from August 2018 until November 2022 and from July 2023 until January 23, 2024, where she was primarily employed as a waitress, but also cleaned the restaurant

15. At all times relevant hereto, Plaintiff LOPEZ was a covered employee within the meaning of the FLSA and the NYLL.

16. Plaintiff KAREN MOLINA ("MOLINA") is and was at all times relevant hereto an individual residing in New York.

17. Plaintiff MOLINA was employed by TAQUERIA LA NORTENA, CORP at its place of business, 668 Manhattan Ave, Brooklyn, NY 11222, from approximately August 1, 2023, until January 23, 2024, where she was primarily employed as a cook, but also cleaned the restaurant.

18. At all times relevant hereto, Plaintiff MOLINA was a covered employee within the meaning of the FLSA and the NYLL.

19. Plaintiff ANGELICA PEREZ ("PEREZ") is and was at all times relevant hereto an individual residing in New York.

20. Plaintiff PEREZ was employed by TAQUERIA LA NORTENA, CORP at its place of business, 668 Manhattan Ave, Brooklyn, NY 11222, from approximately April 9, 2023, until January 22, 2024, where she was primarily employed as a cook, but also cleaned the restaurant.

21. At all times relevant hereto, Plaintiff PEREZ was a covered employee within the meaning of the FLSA and the NYLL.

22. Plaintiff MICHAEL VALENCIA ("VALENCIA") is and was at all times relevant hereto an individual residing in New York.

23. Plaintiff VALENCIA was employed by TAQUERIA LA NORTENA, CORP at its place of business, 668 Manhattan Ave, Brooklyn, NY 11222, from approximately January 2015 until January 21, 2024, where he was primarily employed as a waiter, but also cleaned the restaurant.

24. At all times relevant hereto, Plaintiff VALENCIA was a covered employee within the meaning of the FLSA and the NYLL.

**Defendants**

25. Defendant TAQUERIA LA NORTENA, CORP is, upon information and belief, a duly organized New York Corporation with its principal place of business located at 668 Manhattan Ave, Brooklyn, NY 11222.

26. Upon information and belief, Defendant TAQUERIA LA NORTENA, CORP is engaged in interstate commerce in that it relies heavily on products that have been transported across state lines, and generates annual gross revenues in excess of $500,000 per year, independent of excise taxes, for years 2021 through 2024, and were directly engaged in interstate commerce.

27. Upon information and belief, Defendant GUILLERMO LOPEZ is the President, Chief Executive Officer, manager, principal, and/or agent of Defendant TAQUERIA LA NORTENA, CORP.

28. Upon information and belief, and at all times relevant to the claims herein, Defendant GUILLERMO LOPEZ possessed operational control over Defendant TAQUERIA LA NORTENA, CORP because of his ownership interest and/or control of significant functions of Defendant Corporation; that Defendant GUILLERMO LOPEZ: (i) was known and referred to as the "Boss" by the Plaintiffs and the other similarly situated employees of Defendant TAQUERIA LA NORTENA, CORP; (ii) determined the wages and compensation of the employees of Defendants, including the Plaintiffs; and (iii) established Plaintiff's and other employees' work schedules and workload; (iv) maintained employee records; (v) paid the Plaintiffs and the other employees their weekly wages; (vi) possessed the authority to hire and fire employees.

29. Defendant GUILLERMO LOPEZ acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2.

## COMMON FACTUAL ALLEGATIONS
Defendants Constitute Joint Employers

30. Defendants owned and operated TAQUERIA LA NORTENA, CORP, a corporate entity located at 668 Manhattan Ave, Brooklyn, NY 11222. At all relevant times, Defendants TAQUERIA LA NORTENA, CORP and GUILLERMO LOPEZ possessed operational control over Defendant Corporation, possessed an ownership interest in Defendant Corporation, and/or controlled significant functions of Defendant Corporation.

31. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs LOPEZ, MOLINA, PEREZ, and VALENCIA by engaging in a pattern and/or policy of violating the FLSA and NYLL. This pattern and/or policy includes, inter alia, the following:

   a. failing to pay employees the applicable overtime rate (one and one-half the rate of regular pay) for work performed in excess of forty (40) hours per week

   b. failing to keep accurate records of hours worked by employees as required by the FLSA and NYLL; and

   c. failing to provide statutorily required wage and hour records or statements of pay received, in part to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiff and other similarly situated employees' relative lack of sophistication in wage and hour laws.

   d. failing to pay employees the applicable minimum rate for work performed for the first forty (40) hours per week;

32. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation. Defendants'

unlawful conduct has been intentional, willful, and in bad faith and has caused significant damage to Plaintiffs LOPEZ, MOLINA, PEREZ, VALENCIA, and the other class members.

33. Defendant TAQUERIA LA NORTENA, CORP, under the direct supervision and authority of Defendant GUILLERMO LOPEZ, acted in the interest of the Defendants with respect to its employees, the rate of and method employee compensation was paid and shared joint control over their employees.

34. At relevant times, Defendants TAQUERIA LA NORTENA, CORP, and GUILLERMO LOPEZ possessed substantial control over Plaintiffs LOPEZ, MOLINA, PEREZ, VALENCIA, and other similarly situated employees' working conditions and over the policies and practices with respect to the employment and compensation of the Plaintiffs, and all similarly situated individuals, referred to herein.

35. Defendants TAQUERIA LA NORTENA, CORP, and GUILLERMO LOPEZ jointly employed the Plaintiffs and are Plaintiff's employers within the meaning of 29 USC 201 et seq. and the NYLL.

36. Defendants TAQUERIA LA NORTENA, CORP, and GUILLERMO LOPEZ constitute a single employer of the Plaintiffs and/or similarly situated individuals, as any business divisions between them are fictional.

37. At all times relevant hereto, Defendants TAQUERIA LA NORTENA, CORP, and GUILLERMO LOPEZ were Plaintiff's employers within the meaning of the FLSA, NYLL, and other applicable laws. Such Defendants had the authority and power to hire and fire the Plaintiffs and other similarly situated employees, control the terms and conditions of their employment, including work assignments and hours, and determine the rate and method of any compensation in exchange for Plaintiff's services. Indeed, the defendant supervised the plaintiff's work schedule and conditions of employment.

**Plaintiff VALERIA LOPEZ**

38. From approximately 2014 until June 2018, then again from August 2018 until November 2022, and from July 2023 until January 23, 2024, Plaintiff was employed by Defendants at their 668 Manhattan Ave, Brooklyn, NY 11222 facility, where Plaintiff LOPEZ worked as a waitress and cleaned the restaurant. At the beginning of her employment, Plaintiff was paid $60 per night, but for the last four (4) years, she has been paid $10 per hour; she also received $60-$100 on tips daily. The defendant paid her weekly in cash, and for the last four months of her employment, she received checks.

39. Plaintiff LOPEZ worked five to six days per week, from 6:00 P.M. until 4:00 or 5:00 A.M. She worked approximately sixty-six to seventy (66-70) hours weekly.

40. From January 23, 2018, until June 15, 2018, Plaintiff was paid $6 per hour, the underpayment per week was $369, and the total underpayment of that period of time was $7,380. From August 15, 2018, until December 31, 2018, Plaintiff was paid $6 per hour, the underpayment per week was $369, and the total underpayment of that period of time was $7,380. From January 1, 2019, until December 31, 2019, Plaintiff was paid $6 per hour, the underpayment per week was $369, and the total underpayment of that period of time was $19,188. From January 1, 2020, until December 31, 2020, Plaintiff was paid $6 per hour, the underpayment per week was $369, and the total underpayment of that period of time was $19,188. From January 1, 2021, until December 31, 2021, Plaintiff was

paid $10 per hour, the underpayment per week was $105, and the total underpayment of that period of time was $5,460. From January 1, 2022, until November 15, 2022, Plaintiff was paid $10 per hour, the underpayment per week was $105, and the total underpayment of that period of time was $4,725. From July 15, 2023, until December 31, 2023, Plaintiff was paid $10 per hour, the underpayment per week was $105, and the total underpayment of that period of time was $2,520. From January 1, 2024, until January 26, 2024, Plaintiff was paid $10 per hour, the underpayment per week was $184, and the total underpayment of that period of time was $736. The total amount of unpaid wages is approximately $66,577.

41. Plaintiff LOPEZ did not work at her own convenience but was required to report to work in accordance with a work schedule devised by Defendants. Moreover, once scheduled for a shift, Plaintiff LOPEZ did not come and go at her pleasure but rather was controlled by Defendants.

42. Plaintiff LOPEZ was a covered employee within the meaning of the FLSA and the NYLL and was not exempt thereunder as her employment position and assignments were not "professional," "executive," or even "administrative" and did not require discretion nor independent judgment. Plaintiff LOPEZ's work is properly characterized as menial physical labor.

43. Plaintiff LOPEZ regularly handled goods in interstate commerce and other items produced outside of the State of New York.

44. Plaintiff worked without appropriate overtime wages from the beginning until the end of her employment with Defendants.

45. No notification, either in the form of posted notices, or other means, was ever given to Plaintiff LOPEZ regarding wages as required under the FLSA and NYLL.

46. Defendants did not provide Plaintiff LOPEZ with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

47. Defendants never provided Plaintiff LOPEZ with written notice of her pay rate, employer's regular payday, and such other information as required by NYLL §195(1).

**Plaintiff KAREN MOLINA**

48. From approximately August 1, 2023, until January 23, 2024, Plaintiff was employed by Defendants at their 668 Manhattan Ave, Brooklyn, NY 11222 facility, where Plaintiff MOLINA worked as a cook and cleaned the restaurant.

49. Plaintiff MOLINA worked seven days per week at the beginning of her employment; from September 17, 2023, she started working six days per week, and since October 16, 2023, she started working five days per week, Monday to Thursdays, and Sundays from 4:00 P.M. until 3:00 A.M. Fridays and Saturdays from 4:00 P.M. until 5:00 A.M. When she worked seven (7) days per week she did approximately seventy-four (74) hours weekly, six days per week she did approximately sixty-four (64) hours weekly. At the end of her employment, she did fifty-four (54) hours weekly.

50. Plaintiff MOLINA was paid at a rate of $15 per hour at the beginning of her employment; in 2024, the defendants raised her payment to $16 per hour. All payments in cash. From August 1, 2023, until September 16, 2023, Plaintiff was paid $15 per hour, the underpayment per week was $255, and the total underpayment of that period of time was $1,785. From September 17, 2023, until October 15, 2023, Plaintiff was paid $15 per hour, the underpayment per week was $256, and the total underpayment of that period of time was $1,024. From October 16, 2023, until December 31, 2023, Plaintiff was paid $15 per hour, the underpayment per week was $166, and the total underpayment of that period of time was $1,826. From January 1, 2024, until January 24, 2024, Plaintiff was paid

$16 per hour, the underpayment per week was $112, and the total underpayment of that period of time was $336. The total amount of unpaid wages is approximately $4,971.

51. Plaintiff MOLINA did not work at her own convenience but was required to report to work in accordance with a work schedule devised by Defendants. Moreover, once scheduled for a shift, Plaintiff MOLINA did not come and go at her pleasure but rather was controlled by Defendants.

52. Plaintiff MOLINA was a covered employee within the meaning of the FLSA and the NYLL and was not exempt thereunder as her employment position and assignments were not "professional," "executive," or even "administrative" and did not require discretion nor independent judgment. Plaintiff MOLINA's work is properly characterized as menial physical labor.

53. Plaintiff MOLINA regularly handled goods in interstate commerce and other items produced outside of the State of New York.

54. Plaintiff worked without appropriate overtime wages from the beginning and until the end of her employment with Defendants.

55. No notification, either in the form of posted notices or other means, was ever given to Plaintiff MOLINA regarding wages as required under the FLSA and NYLL.

56. Defendants did not provide Plaintiff MOLINA with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

57. Defendants never provided Plaintiff MOLINA with written notice of her pay rate, employer's regular payday, and such other information as required by NYLL §195(1).

**Plaintiff ANGELICA PEREZ**

58. From approximately April 9, 2023, until January 22, 2024, Plaintiff was employed by Defendants at their 668 Manhattan Ave, Brooklyn, NY 11222 facility, where Plaintiff PEREZ worked as a cook and cleaned the restaurant.

59. Plaintiff PEREZ worked six days per week at the beginning of her employment; since October, she has worked five days per week, Sunday to Thursday, from 4:00 P.M. until 3:00 A.M. Fridays and Saturdays from 4:00 P.M. until 5:00 A.M. She worked approximately seventy (70) hours weekly at the beginning of her employment. When she stopped working for the defendants, she worked fifty-seven (57) hours weekly.

60. Plaintiff PEREZ was paid at a rate of $14 at the beginning of her employment; later on, Defendants raised her pay to $15 per hour, and at the end of her employment, she was earning $16 per hour. All payments in cash. From April 9, 2023, until July 2, 2023, Plaintiff was paid $14 per hour, the underpayment per week was $176.25, and the total underpayment of that period of time was $2,115. From July 3, 2023, until December 31, 2023, Plaintiff was paid $15 per hour, the underpayment per week was $183.54, and the total underpayment of that period of time was $4,7771. From January 1, 2024, until January 24, 2024, Plaintiff was paid $16 per hour, the underpayment per week was $212.13, and the total underpayment of that period of time was $636.39. The total amount of unpaid wages is approximately $7,523.

61. Plaintiff PEREZ did not work at her own convenience but was required to report to work in accordance with a work schedule devised by Defendants. Moreover, once scheduled for a shift, Plaintiff PEREZ did not come and go at her pleasure but rather was controlled by Defendants.

62. Plaintiff PEREZ was a covered employee within the meaning of the FLSA and the NYLL and was not exempt thereunder as her employment position and assignments were not "professional," "executive," or even "administrative" and did not require discretion nor independent judgment. Plaintiff PEREZ's work is properly characterized as menial physical labor.

63. Plaintiff PEREZ regularly handled goods in interstate commerce and other items produced outside of the State of New York.

64. Plaintiff worked without appropriate overtime wages from the beginning and until the end of her employment with Defendants.

65. No notification, either in the form of posted notices or other means, was ever given to Plaintiff PEREZ regarding wages as required under the FLSA and NYLL.

66. Defendants did not provide Plaintiff PEREZ with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

67. Defendants never provided Plaintiff PEREZ with written notice of her pay rate, employer's regular payday, and such other information as required by NYLL §195(1).

**Plaintiff MICHAEL VALENCIA**

68. From approximately January 2015 until January 21, 2024, Plaintiff was employed by Defendants at their 668 Manhattan Ave, Brooklyn, NY 11222 facility, where Plaintiff VALENCIA worked as a waiter and cleaned the restaurant.

69. Plaintiff VALENCIA worked five days per week. Still, sometimes he worked six days per week, Sunday to Thursday, from 4:00 P.M. until 3:00 A.M. Fridays and Saturdays from 4:00 P.M. until 4:00 A.M. He worked approximately forty-seven to fifty-seven (47-57) hours per week.

70. Plaintiff VALENCIA was paid $60 per night, but since 2019, he has been paid $10 per hour; he also received $50-$100 on tips daily. The defendant paid him

weekly in cash. From January 21, 2018, until December 31, 2018, Plaintiff was paid $5 per hour, the underpayment per week was $610, and the total underpayment of that period of time was $29,890. From January 1, 2019, until December 31, 2019, Plaintiff was paid $10 per hour, the underpayment per week was $350, and the total underpayment of that period of time was $18,200. From January 1, 2020, until December 31, 2020, Plaintiff was paid $10 per hour, the underpayment per week was $350, and the total underpayment of that period of time was $18,200. From January 1, 2021, until December 31, 2021, Plaintiff was paid $10 per hour, the underpayment per week was $350, and the total underpayment of that period of time was $18,200. From January 1, 2022, until December 31, 2022, Plaintiff was paid $10 per hour, the underpayment per week was $350, and the total underpayment of that period of time was $18,200. From January 1, 2023, until December 31, 2023, Plaintiff was paid $10 per hour, the underpayment per week was $350, and the total underpayment of that period of time was $18,200. From January 1, 2024, until January 21, 2024, Plaintiff was paid $10 per hour, the underpayment per week was $408, and the total underpayment of that period of time was $1,224. The total amount of unpaid wages is approximately $122,114.

71. Plaintiff VALENCIA did not work at his own convenience but was required to report to work in accordance with a work schedule devised by Defendants. Moreover, once scheduled for a shift, Plaintiff VALENCIA did not come and go at his pleasure but rather was controlled by Defendants.

72. Plaintiff VALENCIA was a covered employee within the meaning of the FLSA and the NYLL and was not exempt thereunder as his employment position and assignments were not "professional," "executive" or even "administrative" and did not require discretion nor independent judgment. Plaintiff VALENCIA's work is properly

characterized as menial physical labor.

73. Plaintiff VALENCIA regularly handled goods in interstate commerce and other items produced outside of the State of New York.

74. Plaintiff worked without appropriate overtime wages from the beginning and until the end of his employment with Defendants.

75. No notification, either in the form of posted notices, or other means, was ever given to Plaintiff VALENCIA regarding wages as required under the FLSA and NYLL.

76. Defendants did not provide Plaintiff VALENCIA with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

77. Defendants never provided Plaintiff VALENCIA with written notice of his pay rate, employer's regular payday, and such other information as required by NYLL §195(1).

## Defendants' General Employment Practices

78. As part of their regular business practices, Defendants required Plaintiffs LOPEZ, MOLINA, PEREZ, and VALENCIA to work in excess of forty (40) hours per week without paying Plaintiff the proper overtime wages as required by federal and state laws.

79. By such standard policy and practice, Defendants violated Plaintiff's rights under the FLSA and New York Labor Law by not paying them the wages they were owed for the amount of hours they had worked.

80. Defendants failed to post the statutorily required wage and hour posters. They did not provide Plaintiffs LOPEZ, MOLINA, PEREZ, and VALENCIA with statutorily required wage and hour records or statements of pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiff's relative lack of sophistication in wage and hour laws.

81. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours the Plaintiffs worked and to avoid paying Plaintiff properly for (i) their full hours worked, (ii) minimum wages, and (iii) overtime wages.

82. The NYLL and Wage Theft Prevention Act require employers to provide all employees with written notice of wage rates.

83. Throughout the relevant time period, Defendants paid Plaintiffs LOPEZ, MOLINA, PEREZ, and VALENCIA wages without providing an accurate accompanying wage statement and/or annual pay notices required under NYLL §§195(1) and 195(3).

84. Defendants failed to provide Plaintiff LOPEZ, MOLINA, PEREZ, and VALENCIA with accurate accompanying wage statements at the time of payment of wages, containing the dates of work covered by that payment of wages; the name of the employee; the name of the employer; address and phone number of the employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

## FIRST CAUSE OF ACTION
**(Violation of FLSA Minimum and Overtime Wages/ Recordkeeping Provisions)**

85. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

86. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 USC § 203(d). Defendants had the power to hire and fire the Plaintiffs, control the terms and conditions of employment, and

determine the rate and method of any compensation in exchange for their employment.

87. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce and as such, constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 USC § 203 (r-s).

88. Defendants, in violation of the FLSA, failed to pay the Plaintiffs the applicable minimum wages and overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C.§ 207 (a)(1).

89. Defendants' failure to pay the Plaintiffs the applicable minimum and overtime wage was willful within the meaning of 29 U.S.C.§ 255(a).

90. Defendants acted willfully in their violations of the FLSA's requirements.

91. Defendants failed to satisfy the FLSA's recordkeeping requirements.

92. Plaintiffs seek damages for their unpaid lawful minimum and overtime wages, liquidated damages as provided by the FLSA for wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**(Unpaid Minimum and Overtime Wages Under New York Labor Law)**

93. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

94. Defendants, in violation of the NYLL § 190 *et seq*. and associated rules and regulations, failed to pay the Plaintiffs the applicable minimum and overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

95. Defendants' failure to pay Plaintiffs the applicable minimum and overtime

wages was willful within the meaning of N.Y.Lab.Law § 663.

96. Due to Defendants' willful violations of the NYLL, Plaintiffs CAPELLAN, TRAPANI, and NUNEZ are entitled to recover from Defendants their unpaid minimum and overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**

97. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

98. Defendants have failed to provide the Plaintiffs, in English and in Spanish, with complete and accurate wage statements throughout their employment listing and detailing, *inter alia*, all their regular and any overtime hours of work, their rate of pay, the basis of pay and deductions, etc., in violation of NYLL § 195(3).

99. Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants' statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL § 198 (1-d).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff VALERIA LOPEZ, KAREN MOLINA, ANGELICA PEREZ, and MICHAEL VALENCIA respectfully request that this Court enter judgment against Defendants TAQUERIA LA NORTENA, CORP and GUILLERMO LOPEZ as follows:

a. Awarding Plaintiffs liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages and damages for any improper deductions or credits

taken against wages under the FLSA as applicable pursuant to 29 U.S.C.§ 216(b);

 b. Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

 c. Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages;

 d. Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum and overtime wage compensation shown to be owed pursuant to NYLL § 663 as applicable;

 e. Awarding Plaintiffs pre-judgment and post-judgment interest as applicable;

 f. Awarding Plaintiffs the expenses incurred in this action, including costs and attorney's fees; and

 g. All such other and further relief as the Court deems just and proper.

 h. An award of statutory damages for Defendants' failure to provide Plaintiff with complete and accurate wage statements pursuant to NYLL § 198 (1-d);

 i. An award of pre-judgment interest of nine percent per annum (9%) pursuant to the New York Civil Practice Law and Rules §§ 5001-5004;

 j. An award of post-judgment interest pursuant to 28 U.S.C. §

1961 and/or the New York Civil Practice Law and Rules § 5003;

k. Such other relief as this Court shall deem just and proper.

Dated: New York, New York
February 13, 2024

        LINA STILLMAN, ESQ.

_____
Lina Stillman, Esq.
Attorneys for Plaintiff
Stillman Legal, P.C.
42 Broadway, 12t Floor
New York, New York 10004
Tel (212) 203-2417
www.StillmanLegalPC.com